Michele J. Beilke (State Bar No. 194098)
mbeilke@huntonAK.com
Julia Y. Trankiem (State Bar No. 228666)
jtrankiem@huntonAK.com
Veronica A. Torrejón (State Bar No. 310871)
vtorrejon@huntonAK.com
HUNTON ANDREWS KURTH LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone:   213.532.2000
Facsimile:   213.532.2020

*Attorney for Defendants*
ABBOTT LABORATORIES, ST. JUDE
MEDICAL S.C., INC., and ST. JUDE
MEDICAL, LLC (erroneously sued as ST.
JUDE MEDICAL, INC.)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| KIP THENO,<br><br>                    Plaintiff,<br><br>          v.<br><br>ABBOTT LABORATORIES, an Illinois corporation; ST. JUDE MEDICAL S.C., INC., a Minnesota corporation; ST. JUDE MEDICAL, INC., a Minnesota corporation; FRANK FERNANDEZ, an individual; KEITH BOETTIGER, an individual; JESSICA CLINE, an individual; and DOES 1 through 50, inclusive,<br><br>                    Defendants. | Case No. 2:21-cv-585<br><br>[Removal from Los Angeles County Superior Court Case No. 20STCV08597]<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT UNDER 28 U.S.C. §§ 1332 AND 1441**<br><br>[Diversity]<br><br>[*Filed Concurrently with Civil Cover Sheet; Corporate Disclosure Statement and Notice of Interested Parties; Notice of Related Cases; and Declarations of Jessica Paik, Beth Radtke and Veronica A. Torrejón*]<br><br>Complaint Filed: February 28, 2020 |

1  **TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL**

2  **DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND HIS ATTORNEYS**

3  **OF RECORD:**

4  **PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446,

5  Defendants ABBOTT LABORATORIES, ST. JUDE MEDICAL S.C., INC., and ST.

6  JUDE MEDICAL LLC (erroneously sued as ST. JUDE MEDICAL, INC.) (together,

7  "Abbott") hereby remove the action filed by Plaintiff KIP THENO ("Plaintiff") in the

8  Superior Court of the State of California for the County of Los Angeles, Case No.

9  20STCV08597, to the United States District Court for the Central District of California

10  – Western Division.

11  All other Defendants consent and hereby join in the removal of this action. *See*

12  *Proctor v. Vishay Intertechnology Inc.*, 584 F3d 1208, 1225 (9th Cir. 2009) ("One

13  defendant's timely removal notice containing an averment of the other defendants'

14  consent and signed by an attorney of record is sufficient").  Specifically, Defendant

15  Jessica Cline ("Cline") consents and joins in this removal,[1] and without conceding that

16  this Court has jurisdiction over them, Specially-Appearing Defendants Frank Fernandez

17  ("Fernandez") and Keith Boettiger ("Boettiger") also join in this removal.[2]

18  **INTRODUCTION**

19  This is a successive removal that is both proper and timely, filed by Abbott

20  within 30 days of receiving Plaintiff Kip Theno's deposition transcript, which confirms

21  this case is now removable. Specifically, Plaintiff's testimony unequivocally

---

22  [1]  Cline intends on filing a motion to dismiss the claims against her.

23  [2]  Both Boettiger and Fernandez intend to file a motion to dismiss the claims against
24  them, including for lack of personal jurisdiction. Their joinder in this removal does
  not waive these arguments.  *See Freeney v. Bank of Am. Corp.*, No.
25  CV1502376MMMPJWX, 2015 WL 4366439, at *20 (C.D. Cal. July 16, 2015) ("A
  defendant's election to remove a case to federal court does not waive a personal
26  jurisdiction defense"); *Team Enterprises, LLC v. W. Inv. Real Estate Tr.*, No. CV F
  08-1050LJOSMS, 2008 WL 4367560, at *2 (E.D. Cal. Sept. 23, 2008) ("A
27  defendant's choice to first remove an action to federal court before seeking to
  challenge personal jurisdiction does not constitute a waiver of objections to personal
28  jurisdiction"); *Dielsi v. Falk*, 916 F. Supp. 985, 994 (C.D. Cal. 1996) ("a defendant
  'does not waive jurisdictional challenges by removing the case to federal court'").

demonstrates that Cline, the only nondiverse defendant named in Plaintiff's Complaint, is not a proper party to this action.  As such, there is diversity jurisdiction, and this action is properly in federal court.

## JURISDICTION AND VENUE

1.     Abbott asserts that this is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. § 1332, and removal is proper under 28 U.S.C. § 1441 in that it is a civil action between citizens of different States and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2.     This Court is in the judicial district and division embracing the place where the state court case was brought and is pending.  Thus, this Court is the proper district court to which this case should be removed.  28 U.S.C. §§ 1441(a); 1446(a).

## PROCEDURAL BACKGROUND AND PLAINTIFF'S DEPOSITION

3.     On February 28, 2020, Plaintiff Kip Theno filed an action against Abbott in the Superior Court for the State of California, County of Los Angeles, as Case No. 20STCV08597, *Kip Theno v. Abbott Laboratories et al.* (the "State Court Action"). (*See* Compendium of Evidence ("COE") **Exhibit A-1** (the "Complaint").)[3]

4.     On April 29, 2020, Plaintiff served the registered agent for service of process of Abbott with copies of the Summons and Complaint.  (COE **Exhibit C-37**.) **Exhibits A-1 to A-6 and C-34 to C-77** constitute all process, pleadings and orders served on Abbott and all other documents filed in the State Court Action.

5.     On May 28, 2020, Abbott filed and served an Answer to the Complaint in State Court.  (COE **Exhibit A-6**.)

6.     On May 27, 2020, Cline was served with a Summons and Complaint.  On June 29, 2020, Fernandez was served with a Summons and Complaint and, on August 14, 2020, Boettiger was served with a Summons and Complaint.

7.     Abbott removed this Action to federal court on May 28, 2020 and was assigned Case No. 2:20-CV-04765, on the grounds that individual defendant Cline was

[3] All other references are to the "Complaint."

1  fraudulently joined.  (COE **Exhibit B-7**.)[4]

2       8.     On July 15, 2020, the District Court granted Plaintiff's motion to remand

3  the Action to Los Angeles County Superior Court, (COE **Exhibit B-31**) finding that "it

4  may still be possible for Plaintiff to amend his complaint" and to allow for the

5  possibility that Plaintiff could allege "new or different facts" to support a claim against

6  Cline. (COE **Exhibit B-31** [Order at pp. 7, 8].)

7       9.     Once the case was remanded to state court, Cline filed a demurrer to

8  Plaintiff's Complaint and the parties began discovery. However, the Court has not yet

9  issued a final ruling on Cline's demurrer.

10       10.    On December 23, 2020, Abbott deposed Plaintiff. Plaintiff's testimony

11  unequivocally demonstrates that Plaintiff has no factual or other basis for joining Cline

12  and that Cline is not a proper party to this action. Specifically, the two causes of action

13  asserted against Cline (Theno's former secretary) – defamation and intentional

14  infliction of emotional distress ("IIED") – are not grounded in Plaintiff's personal

15  knowledge or any facts whatsoever.  For his defamation claim against Cline, Plaintiff

16  admits that he has no knowledge of any statements that Cline made about him that were

17  false and that nobody has ever told him about any false statements from Cline.

18       Q.    …my question is, do you have any knowledge of any statements

19       that Jessica Cline made that were false, involving you?

20       A.    Outside of my belief, I do not recall personal knowledge of that.

21       (COE **Exhibit D-78** [Declaration of Veronica Torrejón attaching

22       Plaintiff's Deposition Transcript ("Plaintiff's Dep. Tr.") at 66:19-23].)

23       …

24       Q.    Did any other employee of Abbott ever tell you that Jessica Cline

25       made a false statement about you?

26       A.    Not that I can recall.

27  _____

[4] All documents filed in the United States District Court for the Central District of

28  California, after the initial removal, Case No. 2:20-cv-04765, are attached as **Exhibits B-7** to **B-33**.

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

1    Q.    And you're doing your best to recall; is that correct?

2    A.    Yes.

3    (COE **Exhibit D-78** [Plaintiff's Dep. Tr. at 67:18-22].)

4    …

5    Q.    Do you have any personal knowledge that Jessica Cline was

6    speaking to anybody on your team regarding you?

7    A.    Not that I can recall at this time.

8    (COE **Exhibit D-78** [Plaintiff's Dep. Tr. at 90:10-12].)

9   For his IIED claim against Cline, Plaintiff merely speculates that Cline was "spying" on

10  him.  (*Id.* at 68:9-11.)  Plaintiff testified that he only ***believes*** that Cline was "spying" on

11  him because she spoke frequently with Boettiger and told Plaintiff about conversations

12  she had with Boettiger. (*Id.* at 69:2-12.)

13    Q.    And what's the basis for your statement that Jessica Cline was

14    reporting everything back to Keith?

15    A.    She told me she was in communication with Keith.  She had told me

16    that she went to Keith and let him know about our conversations… And

17    then on several occasions, she said, hey, Keith wants to know what's

18    happening with you and your situation, as if he didn't know.  So, yes, they

19    were in constant communication by her own admission.

20    (COE **Exhibit D-78**  [Plaintiff's Dep. Tr. at 69:2-12].)

21  Moreover, even if Cline told Boettiger about her conversations with Plaintiff, Plaintiff

22  testified that Cline did so at Boettiger's direction.

23    Q.    Do you believe that Keith Boettiger asked Jessica Cline to talk to

24    him about how things were going with you during the time period that she

25    was your assistant?

26    A.    Well, I believe that Jessica said -- Jessica told me that.

27    Q.    So is the answer "yes"?

28    A.    Yes.

– 4 –

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

(COE **Exhibit D-78**  [Plaintiff's Dep. Tr. at 87:3-11].)

For instance, according to Plaintiff, Cline would say, "hey, Keith wants to know what's going on, like he didn't know."  (COE **Exhibit D-78**  [Plaintiff's Dep. Tr. at 87:12-21].) Notwithstanding, Plaintiff testified that he had a good relationship with Cline.  (*Id.* at 50:13-21, 58:3-10, 60:23-61:2.)[5]

11.    As a matter of law, these admissions conclusively establish that Theno cannot support a cause of action against Cline for either defamation or IIED.  To sustain a defamation claim, Theno must demonstrate that Cline published a false statement of fact. *Gregory v. McDonnell Douglas Corp.*, 17 Cal.3d 596, 600 (1976). Theno, however, by his own account has absolutely no basis for believing that Cline ever said anything false about him to anyone. Nor can he sustain an IIED claim, which requires a showing that Cline's behavior was "extreme" and "outrageous." *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991). Here, the essence of Plaintiff's IIED claim is that Cline was spying on him, and yet his testimony demonstrates that, at most, Cline was asking Theno questions at the request of his supervisor and that she made no secret of it.  There is nothing "extreme" and "outrageous" about Cline's behavior, which was well within the scope of her employment.  For this reason, the Workers' Compensation Act would also preempt any such claim against her. *Cole v. Fair Oaks Fire Protection Dist.,* 43 Cal. 3d 148, 160 (1987).

---

[5] Notably, Plaintiff testified that he did not recall the reason why Cline relocated to California from Texas, nor did he know when she relocated.  (COE **Exhibit D-78** [Plaintiff's Dep. Tr. at 51:1-19].)  However, in his briefing on Plaintiff's Motion to Remand, following the first removal to federal court, Plaintiff repeatedly alleged that he could and would amend his Complaint to show that Cline was suddenly transferred the day after Plaintiff complained to Employee Relations that Abbott was using confidential information to hire new employees. (COE **Exhibit B-27** [Reply ISO Mot. to Remand at pp. 5-6].) Plaintiff claimed – in his briefing in support of remand – that Cline was transferred in order to "effectuate a campaign of intimidation in order to help Abbott to create a justification for Plaintiff's termination. She was not assigned to be Plaintiff's assistant to carry out a legitimate business purpose, but instead to spy on and harass Plaintiff and also to pass information to Boettiger and prevent Theno from complaining about any other violations of law by Abbott employees." *Id.* Plaintiff's deposition testimony, however, paints a very different picture. Plaintiff, testified that he, in fact, knew that Cline was going to be his secretary when he traveled to Austin – before he complained to Employee Relations. (COE **Exhibit D-78** [Plaintiff's Dep. Tr. at 53:12-16].)

1       12.    As such, this Action is one that Defendants may remove to this Court

2  under 28 U.S.C. § 1441, because Defendants have satisfied the procedural requirements

3  and this Court has subject matter jurisdiction over the Action under 28 U.S.C. §

4  1332(a). Specifically, now that Plaintiff has admitted that he has no factual basis for

5  joining Cline, her joinder is fraudulent and should, therefore, be disregarded.  There is

6  complete diversity of citizenship between all remaining parties in this action; namely,

7  Abbott and the remaining Individual Defendants, and the amount in controversy

8  requirement is met.

9                      **THE INSTANT REMOVAL IS TIMELY**

10       13.    "[A] notice of removal may be filed within 30 days after receipt by the

11  defendant, through service or otherwise, of a copy of an amended pleading, motion,

12  order or ***other paper*** from which it may first be ascertained that the case is one which is

13  or has become removable." 28 U.S.C. § 1446 (emphasis added).

14       14.    In the Ninth Circuit, discovery responses and deposition testimony

15  constitute "other paper" and can trigger the 30-day removal period. *Carvalho v. Equifax*

16  *Info. Servs., LLC*, 629 F.3d 876, 886–87 (9th Cir. 2010) (holding that deposition

17  testimony can qualify as "other paper" when a defendant is able to reasonably

18  determine for the first time that subject matter jurisdiction exists); *Rider v. Sears*

19  *Roebuck & Co*., 2011 WL 2222171, at *3–4 (C.D. Cal. June 7, 2011); *Williams v.*

20  *Hilarides*, 2012 WL 2339335, at *2 (E.D. Cal. June 19, 2012).

21       15.    This 30-day period applies even to cases that have previously been

22  removed and remanded, so long as the latter removal is "based on information not

23  available at the prior removal." *See Sweet v. United Parcel Serv., Inc*., 2009 WL

24  1664644, at *3 (C.D. Cal. June 15, 2009) ("Where a court has previously remanded a

25  removed action for a defendant's failure to meet its burden, successive notices of

26  removal, though not necessarily barred, generally must be based on information not

27  available at the prior removal"); *see also Barahona v. Orkin,* 2008 WL 4724054, at *2

28  (C.D. Cal. Oct. 21, 2008) (explaining that successive removals must be based on

1  "newly discovered facts not available at the time of the first removal"); *Vieira v. Mentor*

2  *Worldwide, LLC*, 392 F. Supp. 3d 1117, 1127 (C.D. Cal. 2019) (deposition testimony

3  used to establish fraudulent joinder in a successive removal); *Lockhart v. Columbia*

4  *Sportswear Co.*, 2016 WL 2743481, at *3, n.3 (C.D. Cal. May 11, 2016) ("New

5  evidence discovered in a deposition may be grounds for a successive removal").

6       16.    Here, this case did not become removable until December 23, 2020, when

7  Plaintiff testified that he has no personal knowledge with respect to the claims against

8  Cline – he relies only on his beliefs, untethered to any actual facts. Put simply, the new

9  information gleaned from Plaintiff's December 23, 2020 deposition constitutes the

10  "other paper" that makes a successive removal in this case proper, so long as it is filed

11  within 30 days, *i.e.,* on or before January 22, 2021. Thus, this Notice of Removal is

12  timely.

13                **COMPLETE DIVERSITY OF CITIZENSHIP EXISTS**

14       17.    The parties are completely diverse in this matter because Plaintiff is a

15  citizen of California and Abbott is exclusively a citizen of Illinois and Minnesota for

16  purposes of removal. Individual Defendants Fernandez and Boettiger are citizens of

17  Florida and Texas, respectively. As explained in detail below, Cline is not a proper

18  party to this Action and her citizenship should, therefore, be disregarded for purposes of

19  diversity.

20       18.    **Plaintiff's Citizenship**. For diversity purposes, a person is a "citizen" of

21  the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd*., 704 F.2d

22  1088, 1090 (9th Cir. 1983). A person's domicile is the place he or she resides with the

23  intention to remain or to which he or she intends to return. *Kanter v. Warner-Lambert*

24  *Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

25       19.    As set forth in the Complaint, Plaintiff "is an individual residing in Los

26  Angeles County, California." (Complaint at ¶ 1.) As such, Plaintiff is domiciled in, and

27  for purposes of diversity jurisdiction is a citizen of, the State of California (and, more

28  specifically, Los Angeles County).

20.   **Corporate Citizenship**.  Pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

21.   A corporation's principal place of business is determined under the "nerve center" test.  *See Hertz Corp. v. Friend,* 559 U.S. 77, 92-93 (2010).  Under this test, the principal place of business is the state where "a corporation's officers direct, control, and coordinate the corporation's activities."  *Id.*  A corporation's nerve center is a "single place" and "should normally be the place where the corporation maintains its headquarters."  *Id.* at 93.  Relevant factors include where executives reside and maintain offices, where administrative and financial offices are located, where the board of directors meets, and where day-to-day control over the company is executed.  *See, e.g., Tomblin v. XLNT Veterinary Care, Inc.,* 2010 WL 2757311, at *4 (S.D. Cal. 2010).

22.   Abbott is now, and was at the time this action was commenced, a citizen of the State of Illinois within the meaning of 28 U.S.C. § 1332.  More specifically, Abbott Laboratories is, and has been at all times since February 28, 2020, incorporated in the State of Illinois with its principal place of business in Illinois.  (Compl. ¶ 2.)

23.   St. Jude Medical S.C., Inc. is now, and was at the time this action was commenced, a citizen of the State of Minnesota within the meaning of 28 U.S.C. § 1332.  More specifically, St. Jude Medical S.C., Inc. is, and has been at all times since February 28, 2020, incorporated in the State of Minnesota with its principal place of business in Minnesota.  (Compl. ¶ 4.)

24.   St. Jude Medical, Inc. no longer exists; St. Jude Medical, Inc. became St. Jude Medical, LLC (a limited-liability company organized under the laws of the State of Delaware) prior to the filing of this action.  (COE **Exhibit D-79** [Declaration of Jessica Paik ("Paik Decl.") ¶¶ 3-6.)])[6] St. Jude Medical, LLC is now, and was at the time this action was commenced, a citizen of the state of Illinois.  *See Johnson v. Columbia Props. Anchorage, LP,* 437 F.3d 894, 899 (9th Cir. 2006) ("like a

---

[6] All other references are to the "Paik Decl."

partnership, an LLC is a citizen of every state of which its owners/members are citizens"). The only owner/member of St. Jude Medical, LLC is Abbott Laboratories, which is incorporated and has its principal place of business in Illinois (its corporate headquarters is located in Abbott Park, Illinois). (Paik Decl. ¶ 6.)

25. Accordingly, Abbott is a citizen of the States of Illinois and Minnesota, and not a citizen of the State of California.

26. **Citizenship of Defendants Fernandez and Boettiger.** As set forth in the Complaint, Individual Defendant Fernandez "is an individual residing in Miami, Florida." (Compl. at ¶ 5.) As such, Fernandez is domiciled in, and for purposes of diversity jurisdiction is a citizen of, the State of Florida.

27. As set forth in the Complaint, Individual Defendant Boettiger "is an individual residing in Austin, Texas." (Compl. at ¶ 6.) As such, Boettiger is domiciled in, and for purposes of diversity jurisdiction is a citizen of, the State of Texas.

28. **Defendant Cline's Citizenship Should be Disregarded.** Individual Defendant Cline (the only non-diverse defendant (Compl. ¶ 7)) is not a proper party to this lawsuit. For purposes of diversity, her citizenship, therefore, should be disregarded.

29. A non-diverse party named in the state court action may be disregarded if the federal court determines that the party's joinder is a "sham" or "fraudulent" so that the plaintiff can state no cause of action against that party. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067-68 (9th Cir. 2001); *see also McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) ("If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, joinder of the resident defendant is fraudulent"). In determining whether a defendant is "fraudulently" joined, courts may properly consider the allegations in the Complaint as well as facts presented by the defendant in its notice of removal. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).

30. Here, Plaintiff's only claims against the Individual Defendants are the Fifth Cause of Action for IIED and the Sixth Cause of Action for defamation.

31.     The allegations in the Complaint and Plaintiff's subsequent deposition testimony confirm that no cause of action may properly be maintained against any Individual Defendant, including Cline, however the analysis below is limited to Cline since she is the only non-diverse defendant.

32.     In the Complaint, Plaintiff names Cline only a handful of times[7] and makes three principal allegations:

- "Defendants CLINE and BOETTIGER told Employer Defendants' employees that Plaintiff was not competent in his performance and actively campaigned to discredit him with his own sales team and other employees." (Compl. ¶ 27.)

- "Once Defendant CLINE started working for Plaintiff it became clear that she was gathering information regarding Plaintiff and providing it to Defendant BOETTIGER. This included, but was not limited to, her repeatedly discussing the [Performance Improvement Plan ("PIP")] with Plaintiff and asking Plaintiff why he was in contact with [the Employee Relations Department ("ERD")]." (Compl. ¶ 38.)

---

[7] The Complaint does not identify conduct by Cline that occurred in California. However, in a prior motion responding to Defendants' arguments regarding extraterritoriality, Plaintiff stated, "Theno's Complaint makes clear that most of Cline's unlawful conduct took place in California while she was acting as his assistant in California." (Pl. Motion to Remand n. 2.) Plaintiff has since clarified in a proposed First Amended Complaint that the conduct alleged with respect to Cline occurred in California when Cline was Plaintiff's assistant, for a 12-day time period. California law does **not** apply to conduct that occurred outside of California. *Sarviss v. Gen. Dynamics Info. Tech., Inc.*, 663 F. Supp. 2d 883, 897 (C.D. Cal. 2009); *Russo v. APL Marine Servs., Ltd.*, 135 F. Supp. 3d 1089, 1096 (C.D. Cal. 2015); *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-CV-02177-SI, 2017 WL 1436044, at *7 (N.D. Cal. Apr. 24, 2017) (dismissing claim without leave to amend because court would "not presume that the California common law is meant to have extraterritorial effect"); *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018) ("[I]f the liability-creating conduct occurs outside of California, California law generally should not govern that conduct…"); *Gonzalez v. ITT Corp.*, No. CV 09-3400 SVW (SHX), 2009 WL 10700307, at **5–6 (C.D. Cal. Aug. 10, 2009); *MacKinnon v. Logitech Inc.*, No. 15-CV-05231-TEH, 2016 WL 2897661, at *2 (N.D. Cal. May 18, 2016) (dismissing claims for failure to allege tortious conduct in California, where plaintiff failed to allege "who was responsible for the decision to fire him, where those responsible individuals were located, and where [the plaintiff] was located when he was allegedly discriminated against").

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

- "Beginning in or about the summer of 2019, and continuing up to the present. Plaintiff is informed and believes, and based thereon alleges, that Defendants BOETTIGER, CLINE and FERNANDEZ spoke the following words of and concerning Plaintiff without believing them to be true: (1) that Plaintiff was performing poorly with the Employer Defendants, (2) that Plaintiff was insubordinate and incompetent at work, and (3) that Plaintiff, in his professional capacity, cannot be trusted." (Compl. ¶ 51.)

33.    In Plaintiff's deposition testimony, however, he makes several admissions with respect to the allegations in his Complaint, namely:

- Cline became Plaintiff's assistant in September 2019 and was his assistant for less than two weeks, (COE **Exhibit D-78** [Plaintiff's Dep. Tr. at 50:13-21, 58:3-10]) during which time Plaintiff was never in-person with Cline. (*Id.* at 52:21-24.)

- During the two weeks she was his assistant, Plaintiff had a good working relationship with Cline, (*id.* at 60:23-61:2) who told Plaintiff that she did not see anything wrong with his performance. (*Id.* at 63:23-64:6.)

- Plaintiff has no knowledge that Cline made any statements about him that were false (*id.* at 66:19-23, 67:8-16), he cannot recall any employees telling him that Cline made false statements about him, (*id.* at 67:18-20) and he has no knowledge that Cline spoke to anyone on his team about him. (*id.* at 90:10-12.)

- Plaintiff *believes* Cline told people that he left Abbott to pursue other opportunities, which he says was false, but he has no personal knowledge that she ever said that. (*Id.* at 66:4-7.)

- The only thing that Cline said to Plaintiff that he found offensive or inappropriate was that he should start looking for another job and that there was someone lined up to backfill his position when he left, but the

– 11 –

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

1   next day she said she was mistaken. (*Id.* at 61:9-22.)

2   • The only harmful things that Plaintiff claims Cline did to him, were that
3   she asked him questions and relayed his answers to Boettiger. (*Id.* at 68:5-
4   70:5, 70:22-71:3.) According to Plaintiff, it was Boettiger who directed
5   Cline's actions in this regard.  (*Id.* at 87:3-21.)

6   34.    Plaintiff's admissions confirm that there is **no** cause of action against Cline
7   for IIED or defamation.

8                  (a)    **Intentional Infliction of Emotional Distress Claim**

9   35.    Plaintiff's IIED claim fails for two primary reasons: (1) the allegations
10  against Cline do not rise to the requisite level of "extreme and outrageous" to warrant
11  liability for IIED; and (2) the claim is preempted by the California Workers'
12  Compensation Act.

13  36.    To assert a viable claim for IIED, Plaintiff must allege facts demonstrating
14  that, among other things, Cline engaged in extreme and outrageous conduct.
15  *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991).  In that regard, to be
16  "outrageous," Cline's conduct "must be so extreme as to exceed all bounds of that
17  usually tolerated in a civilized community." *Id.* (quoting *Davidson v. City of*
18  *Westminster*, 32 Cal. 3d 197, 209 (1982)). Liability for IIED "does not extend to mere
19  insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Hughes*
20  *v. Pair*, 46 Cal. 4th 1035, 1051 (2009).

21  37.    The type of conduct deemed "extreme and outrageous" in other
22  employment cases is strikingly different when compared with Plaintiff's innocuous
23  allegations against Cline.  For example, in *Alcorn v. Anbro Eng'g, Inc.,* 2 Cal. 3d 493
24  (1970), the court found that a supervisor's conduct towards the African-American
25  plaintiff was sufficiently outrageous where supervisor cursed at and shouted racial
26  epithets at him.  *Id.* at 496-98.  On the other hand, actions not meeting the extreme and
27  outrageous standard have included a severely obese plaintiff's supervisor mocking her
28  for her troubles getting a properly-sized uniform, asking her about weight-loss surgery,

– 12 –

1   telling her she did not need to eat something, and telling the kitchen staff not to give her

2   extra food.  *Cornell v. Berkeley Tennis Club*, 18 Cal. App. 5th 908, 940 (2017).

3   Similarly, in *Light v. Department of Parks & Recreation*, 14 Cal. App. 5th 75 (2017),

4   the allegations against the defendant supervisor included: refusing to listen to the

5   plaintiff's complaints about retaliation; encouraging efforts to silence the plaintiff; and

6   participating in the retaliation against her.  *Light*, 14 Cal. App. 5th at 102.  The court

7   explained that, even if the defendant's actions contributed to the employer's unlawful

8   retaliation against the plaintiff, they were insufficient for an IIED claim.  *Id.*

9       38.   As in *Light* and *Cornell*, Plaintiff cannot establish that any of Cline's

10  alleged actions were sufficiently "extreme and outrageous" to warrant liability for IIED.

11  The only time period at issue is the 12-day time period when Cline reported to Plaintiff

12  (any other allegation should be dismissed for extraterritoriality since Cline only

13  interacted with Plaintiff outside California prior to the 12-day time period).  Plaintiff

14  testified that, in the brief time period that Cline was his assistant, Plaintiff had a good

15  working relationship with her. (COE **Exhibit D-78** [Plaintiff's Dep. Tr. at 60:23-61:2.)

16  At worst, Plaintiff's sworn deposition testimony demonstrates that: he ***believed*** Cline

17  was gathering information about him at the request of Boettiger (her prior supervisor

18  and his next-level supervisor) (*id.* at 87:3-21); Cline asked about Plaintiff's PIP and

19  complaints to Employee Relations (68:5-70:5, 70:22-71:3); and Cline told Plaintiff that

20  he should start looking for another job because there was someone lined up to take his

21  place. (*Id.* at 61:9-22.)

22      39.   Such actions are woefully insufficient to arise to the level of "extreme and

23  outrageous."  These actions (even if true) are in no way akin to *Alcorn*.  Cline did not

24  shout at Plaintiff or call him names.  Nor are the facts alleged even as extreme as those

25  in *Light* and *Cornell* where the court, even on those facts, found no viable IIED claim.

26  Cline's actions simply do not rise to the level of extreme and outrageous conduct

27  necessary to support an IIED claim.

28      40.   In fact, Cline's alleged conduct constitutes only personnel management

– 13 –

1  activity because Cline allegedly did these acts for the purpose of reporting to Boettiger.

2  As a matter of law, personnel management activity is "not outrageous conduct beyond

3  the bounds of human decency, but rather conduct essential to the welfare and prosperity

4  of society." *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 59 (1996) (noting

5  that "a simple pleading of personnel management activity is insufficient to support a

6  claim of intentional infliction of emotional distress, even if improper motivation is

7  alleged, since managing personnel is not outrageous conduct beyond the bounds of

8  human decency"). *Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348, 1352 (9th

9  Cir. 1984) (discipline or termination of employment cannot give rise to liability for

10 IIED).  Even if it were true that Cline relayed her phone[8] conversations with Plaintiff

11 while she was Plaintiff's secretary and asked him questions he found offensive, her

12 actions would not form the basis of an IIED claim.  Plaintiff cannot cite any case

13 holding that a secretary asking questions – all over the phone and not once in the same

14 California office together – amounts to IIED.

15      41.     Plaintiff's claim for IIED against Cline is also preempted by the California

16 Workers' Compensation Act. The California Workers' Compensation Act, as codified

17 in Labor Code section 3200 *et. seq.*, provides a detailed and comprehensive system of

18 remedies for work related injuries that are the "sole and exclusive remedy" for such

19 injuries and are available only in proceedings before the Workers' Compensation

20 Appeals Board. *See* Lab. Code §§ 3602(a), 5300.  Subject to only limited exceptions,

21 none of which are relevant here, workers' compensation is the only remedy available to

22 injured employees against the employer responsible for injuries "arising out of and in

23 the course of employment." Lab. Code §§ 3600-3602, 5300; *Shoemaker v. Myers,* 52

24 Cal. 3d. 1, 18, 25 (1990). Workers' compensation is generally the exclusive remedy for

25 disabling injuries, whether physical or mental, arising from employment or termination

26 of employment. *See Shoemaker*, 52 Cal.3d. at 16. This includes all injuries, whether

27 physical or mental, that are collateral to or derivative of an injury compensable under

28
---
[8] Again, Plaintiff and Cline were never in person together in California.

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

1 the California Workers' Compensation Act. *Charles J. Vacanti, M.D., Inc. v. State*
2 *Comp. Ins. Fund*, 24 Cal. 4th 800, 814-15 (2001).

3    42.    The California Supreme Court has consistently held that workers'
4 compensation law precludes a civil action for IIED for purported injuries arising during
5 employment. *Cole v. Fair Oaks Fire Protection Dist.,* 43 Cal. 3d 148, 160 (1987)
6 (Workers' Compensation Act bars claims "when the misconduct attributed to the
7 employer is actions which are a normal part of the employment relationship, such as
8 demotions, promotions, criticism of work practices"); *see, e.g., Livitsanos v. Superior*
9 *Court*, 2 Cal. 4th 744, 752 (1992) ("[T]he proposition that intentional or egregious
10 conduct is necessarily outside the scope of the workers' compensation scheme is
11 erroneous . . . . Even intentional 'misconduct' may constitute a 'normal part of the
12 employment relationship'"); *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24
13 Cal. 4th 800, 814-15 (2001) (emotional distress allegedly caused by employer's abusive
14 conduct during termination process held "collateral to or derivative of a compensable
15 workplace injury").  The California Supreme Court also has held that an employee
16 cannot "avoid the exclusive remedy provisions of the Labor Code by characterizing the
17 employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause
18 emotional disturbance." *Cole*, 43 Cal. 3d at 160.

19    43.    Here, Plaintiff's IIED claim against Cline is based entirely on alleged
20 personnel management actions – specifically, an assistant performing her job duties to
21 enforce company policies at the direction of her supervisor's next-level supervisor.
22 Plaintiff admits in his deposition testimony that it was Boettiger who directed Cline's
23 actions.  (*Id.* at 87:3-21.)  Indeed, according to Plaintiff's Complaint, "[a]t all relevant
24 times herein mentioned Defendant Cline…was responsible for issuing orders from
25 Defendant BOETTIGER to Employer Defendants' employees."  (Compl. ¶ 7.)  No
26 alleged action by Cline was outside the scope of the normal employment relationship.
27 As such, workers' compensation law precludes Plaintiff's IIED claim.

28

– 15 –

### (b)   Defamation

*44.*   Plaintiff's defamation claim is similarly deficient.  Under California law, the elements of a defamation claim are: "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Ferrer v. Host Int'l, Inc.*, No. LACV1606798JAKASX, 2017 WL 902848, at *6 (C.D. Cal. Mar. 7, 2017) (dismissing claim where two of the five elements of a defamation claim not met).  Here, Plaintiff cannot demonstrate falsity or any injury to his reputation and, therefore, his defamation claim is not cognizable.

45.   To be defamatory, a publication "must contain a false statement of fact." *Gregory v. McDonnell Douglas Corp.*, 17 Cal.3d 596, 600 (1976).  In his deposition testimony, Plaintiff admitted that he has no knowledge of any false statements that Cline made to other people. (COE **Exhibit D-78** [Plaintiff's Dep. Tr. at 66:19-23].)  In fact, Plaintiff testified that he cannot identify any employees who told him that Cline made a false statement about him.  (*Id.* at 67:18-20.)  As such, if Cline made no false statements about Plaintiff, there can be no viable defamation claim against her.

46.   Plaintiff identified only one statement that he ***believes*[9]** Cline made that, on its face, is not only privileged but also is not a statement that has a tendency to injure and, therefore, is not defamatory. Plaintiff testified that he believes Cline repeated something she heard on a call – that Plaintiff left the company to pursue other opportunities, which Plaintiff alleges was a "lie." (*Id.* at 64:18-20; 64:24-65:4.) However, such statement (even if true) is not defamatory because saying that someone left a company to pursue other opportunities would not injure Plaintiff's reputation.  *See Regalia v. The Nethercutt Collection*, 172 Cal. App. 4th 361, 370 (2009) (statements about why the plaintiff was fired did not by "natural consequence" cause plaintiff actual damages).

47.   The statement that Plaintiff left the company to pursue other opportunities

---

[9] Plaintiff admitted he had no personal knowledge that Cline said he left the company to pursue other opportunities (*id.* at 66:4-7) and his sole basis for believing that she said it is because "that was the narrative to everybody." (*Id.* 65:24-25.)

1   is also privileged, falling under the common interest doctrine, which protects

2   communications made without malice on subjects of mutual interest. Cline's alleged

3   statements are also privileged under Civil Code § 47(c), which states that a privileged

4   communication is one made "[i]n a communication, without malice, to a person

5   interested therein, (1) by one who is also interested…" Cal. Civ. Code § 47(c). "The

6   common-interest privilege explicitly applies to nonmalicious communications within a

7   company concerning the job performance of a current employee…and to managers'

8   communications to colleagues about employees." *Arnaud v. Little Caesar Enters., Inc.,*

9   2018 WL 4772274, at *5 (C.D. Cal. Oct. 1, 2018) (citations omitted); *Noel v. River*

10  *Hills Wilsons, Inc.,* 113 Cal. App. 4th 1363, 1369 (2003) (collecting cases where courts

11  have consistently applied § 47(c) in the employment context).[10]

12      48.     Here, the allegedly defamatory statement that Plaintiff has identified – that

13  Plaintiff left the company to pursue other opportunities – was published to employees

14  who are interested persons, within the meaning of Cal. Civ. Code § 47(c). Thus, these

15  statements are privileged unless Theno can demonstrate malice. *Lundquist v. Ruesser*, 7

16  Cal. 4th 1193, 1209-10 (1994) ("where the complaint discloses a qualified privilege, no

17  malice is presumed and in order to state a cause of action the pleading must contain

18  affirmative allegations of malice in fact"). Nor are any claims of malice supported by

19  the allegations in the Complaint or Plaintiff's deposition testimony. "A general

20  allegation of malice will not suffice." *Robomatic, Inc., v. Vetco Offshore*, 225 Cal. App.

---

21  [10] *See also Kelly v. General Tel. Co.*, 136 Cal. App. 3d 278, 285 (1982)

22  (explaining that the privilege "may apply to the statement that plaintiff falsified invoices" if such statements were made without malice); *McGrory v. Applied Signal*

23  *Tech., Inc.*, 212 Cal. App. 4th 1510, 1540–41 (2013) (employer's statement that employee was uncooperative during investigation was conditionally privileged under

24  Section 47(c)); *Barker v. Fox & Assocs.*, 240 Cal. App. 4th 333, 353-54 (2015) (employer's statements that employee failed to go over instructions with coworker and

25  thereby placed coworker in position where she was unprepared to care for patient was conditionally privileged under Section 47(c)); *Deaile v. Gen. Tel. Co. of California*, 40

26  Cal. App. 3d 841, 846 (1974) (alleged statements concerning the plaintiff's forced retirement, made to employees of the same company, "were only disseminated in an

27  effort to preserve employee morale and job efficiency" and therefore privileged); *Ferrer v. Host Int'l, Inc.*, No. LACV1606798JAKASX, 2017 WL 902848, at *8 (C.D.

28  Cal. Mar. 7, 2017) (denying remand and granting a motion to dismiss defamation claims in the employment context, citing the common interest privilege).

3d 270, 276 (1990).  The requisite malice to defeat a privilege under Section 47(c) is "established by a showing that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication." *Noel v. River Hills Wilsons, Inc.*, 113 Cal. App. 4th 1363, 1370 (2003).

49.   Plaintiff also has not alleged ***any facts***, much less specific facts, that would support actual malice by Cline in particular.  Rather, Plaintiff has testified that, during the two weeks she was his assistant, Plaintiff had a good working relationship with Cline. (Plaintiff's Dep. Tr. at 60:23-61:2.). Plaintiff also testified that Cline told Plaintiff that she did not see anything wrong with his performance.  (*Id.* at 63:23-64:6.) Under the circumstances, any statement by Cline about the circumstances surrounding Plaintiff's departure from the company – including a statement that he left the company to pursue other opportunities – would be privileged.  However, Plaintiff cannot identify any person to whom Cline allegedly made such a statement; in fact, Plaintiff testified that he has no knowledge that Cline spoke to anybody on his team regarding him.  (*Id.* at 90:10-12.)

50.   In summary, because the only causes of action asserted against Cline are for IIED and defamation, and because Plaintiff has failed to state a claim against Cline for any of these causes of action, Cline is a "sham defendant" whose citizenship must be disregarded for purposes of diversity jurisdiction.

51.   **Doe Defendants**.  Although Plaintiff has also named as defendants Does 1 through 50, "[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."  28 U.S.C. § 1441(a); *see also Fristos v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).  Thus, the existence of "Doe" defendants does not deprive the Court of jurisdiction.

52.     In conclusion, and as set forth above, complete diversity of citizenship exists under 28 U.S.C. § 1332, and removal is proper in this case pursuant to 28 U.S.C. § 1441.

## AMOUNT IN CONTROVERSY

53.     The Complaint alleges claims for: (1) retaliation in violation of California Labor Code Section 1102.5; (2) wrongful termination in violation of public policy; (3) Unfair Business Practices; (4) waiting time penalties; (5) IIED; and (6) defamation. Plaintiff's prayer for relief includes "compensatory damages," "statutory penalties" (including penalties under Labor Code Section 1102.5 and waiting time penalties), "restitution," "mental and emotional distress damages," "reasonable attorneys' fees," and "punitive damages." *See* Compl. at Prayer.

54.     Plaintiff's Complaint does not specify the amount that he seeks to recover from Defendants in this action. Where removal is based on diversity of citizenship and the initial pleading seeks a money judgment but does not demand a specific sum, "the notice of removal may assert the amount in controversy," 28 U.S.C. 1446(c)(2), and a removing defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554, 574 U.S. 81 (2015).

55.     In measuring the amount in controversy, the Court must assume that the allegations of the Complaint are true and that a jury will return a verdict in favor of the plaintiff on all claims asserted in the Complaint. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is the amount that is put "in controversy" by the Complaint, and not how much, if anything, the defendant will actually owe. *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (*citing Schere v. Equitable Life Assurance Soc'y of the United States*, 347 F.3d 394, 399 (2d Cir. 2003) (recognizing that the ultimate or provable amount of damages is not what is considered in the removal analysis; rather, it is the amount put in controversy by the plaintiff's complaint)). In determining the

amount in controversy, the Court may consider damages awards in similar cases.
*Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005).

56.     Although Abbott denies the validity and merit of all of Plaintiff's claims and allegations and denies that Plaintiff is entitled to any relief, Plaintiff's claims establish an amount "in controversy" in excess of the jurisdictional minimum of $75,000, exclusive of interest and costs, as set forth below:

57.     **Lost Earnings**.  If Plaintiff prevails on his claims for retaliation and/or wrongful termination, he potentially could recover the amount he would have earned up through the date of trial, including any benefits or pay increases. *See Parker v. Twentieth Century-Fox Film Corp.*, 3 Cal. 3d 176 (1970); *Wise v. S. Pac. Co.,* 1 Cal. 3d 600, 607 (1970).

58.     Based on Plaintiff's claims for lost earnings alone, it is more likely than not that the amount in controversy exceeds $75,000, exclusive of interest and costs, as required for diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Plaintiff alleges that as a consequence of Abbott's conduct, "Plaintiff has suffered and will continue to suffer lost wages and other employment benefits, whereby Plaintiff is entitled to general compensatory damages in amounts to be proven at trial, in addition to any other remedies and damages allowed by law." Compl. ¶ 55.  At the time of his separation from employment, Plaintiff's annual base salary was $177,187.50.  (COE **Exhibit D-80** [Declaration of Beth Radtke ("Radtke Decl.") ¶ 3].)[11]  Therefore, Plaintiff's accrued lost wages to date, based on Plaintiff's gross earnings for the period from his alleged termination on October 11, 2019 (Compl. ¶ 49) to the date of this removal (approximately 65 weeks) is **$221,484.38**.  This is a conservative estimate, as lost wages will continue to accrue through the date of trial.  This also excludes any other compensation such as commissions.  In any event, Plaintiff's claim for lost earnings alone is already well above the $75,000.00 threshold.

59.     **Emotional Distress Damages**.  Plaintiff also alleges that he has suffered

---

[11] All other references are to the "Radtke Decl."

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

"severe emotional distress, including but not limited to fright, nervousness, grief, anxiety, worry, shock, humiliation, and indignity, as well as physical pain." and seeks damages related to same. *See, e.g.,* Compl. ¶ 83. Plaintiff's potential recovery of such damages further augments the foregoing amount and demonstrates that the jurisdictional prerequisite for removal of this action is met. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) (holding that emotional distress damages are included in determining amount in controversy).

60.     In *Kroske*, the Ninth Circuit found that the district court's conclusion that the plaintiff's "emotional distress damages would add at least an additional $25,000 to her claim" was not clearly erroneous, where she had only $55,000 in lost wages, thus satisfying the amount in controversy requirement "even without including a potential award of attorney's fees." 432 F.3d at 980. Based on the conservative estimate from *Kroske*, Plaintiff's potential recovery of emotional distress damages could add at least $25,000 to the amount in controversy.

61.     **Punitive (Exemplary) Damages**. Plaintiff also seeks an award of punitive damages. *See*, *e.g.*, Compl. ¶ 57. "In determining the amount in controversy, the court must consider the amount of actual and punitive damages." *Nasiri v. Allstate Indem. Co.*, 41 Fed. Appx. 76, 77 (9th Cir. 2002); *see also Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) (stating that "[i]t is well established that punitive damages are part of the amount in controversy in a civil action."). A single-digit ratio (i.e., no more than nine-to-one) is typically appropriate for an award of punitive damages. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003).

62.     Jury verdicts in California cases involving factual allegations similar to those here demonstrate that, were Plaintiff to prove the allegations of the Complaint and prevail at trial, his punitive damages could bring the amount in controversy to well over the $75,000 threshold.

63.     **Total Amount in Controversy**. Consequently, a preponderance of the evidence demonstrates that the amount in controversy exceeds $75,000, exclusive of

interest and costs.  Plaintiff has put at least **$221,484.38** in controversy with his claims for lost wages alone.  Although no amount has been specified for Plaintiff's claims of emotional distress damages or punitive damages, either of these claims, on its own, could exceed $75,000, exclusive of interest and costs, in a retaliation and wrongful termination lawsuit.  This also does not take into account the other relief Plaintiff seeks, such as statutory penalties (under Labor Code Section 1102.5, the penalty is up to $10,000), waiting time penalties (up to 30 days of daily wages), restitution, or attorneys' fees.  Plaintiff's claims collectively make it facially plain that Plaintiff is seeking far more than the minimum amount needed to meet the amount in controversy requirement.  *See, e.g., Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (finding, by preponderance of the evidence, that a complaint exceeded $75,000 where it sought damages for lost wages, benefits, 401(k) contributions, value of life insurance policies, stock options, emotional distress damages, and attorney's fees and costs).

## **NOTICE**

64.     As required by 28 U.S.C. § 1446(d), Abbott is providing written notice of the filing of this Notice of Removal to Plaintiff, and is filing a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California for the County of Los Angeles.

**WHEREFORE**, Abbott hereby removes from Los Angeles County Superior Court Case No. 20STCV08597 to the United States District Court for the Central District of California – Western Division.

DATED: January 21, 2021            HUNTON ANDREWS KURTH LLP

By: */s/ Julia Y. Trankiem*
Julia Y. Trankiem
*Attorney for Defendants*
ABBOTT LABORATORIES, ST. JUDE
MEDICAL S.C., INC., and ST. JUDE
MEDICAL, LLC (erroneously sued as ST.
JUDE MEDICAL, INC.)

– 22 –